# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **BELINDA SIMS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 4:07-CV-00173-RDP** |
| } | |
| **MICHAEL J. ASTRUE, Commissioner** } | |
| **of Social Security,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Belinda Sims brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), and Section 1631(c) of the Act, 42 U.S.C. § 1383(c), and seeks judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits under Title II of the Act. For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and the proper legal standards were applied.

### I. Proceedings Below

Plaintiff filed her application for disability and disability insurance benefits on November 2, 2004. (Tr. 40-44). Plaintiff alleges a disability onset date of June 6, 2003. (Tr. 40). Plaintiff's application was denied initially and also upon reconsideration. (Tr. 35-38). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). (Tr. 25-29). The Honorable Earl C. Cates, Jr. heard Plaintiff's case on Friday, July 21, 2006, in Decatur, Alabama. (Tr. 21-25). In the decision dated September 8, 2006, the ALJ determined Plaintiff was not eligible for disability

or disability insurance benefits because she failed to meet the disability requirements of the Social Security Act and retained the residual functional capacity ("RFC") to perform basic work-related activities for at least twelve consecutive months. (Tr. 9-20). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on November 28, 2006 (Tr. 5), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.

At the time of the hearing, Plaintiff was forty-three years old and had a high school education. (Tr. 442, 446). Plaintiff previously worked in several semi-skilled jobs, including work periods as a house cleaner, sales rep, and babysitter. (Tr. 441, 446- 47). Plaintiff alleges that she suffers from fibromyalgia. (Tr. 77, 441). According to Plaintiff, her pain has rendered her unable to engage in substantial gainful activity since 2003. (Tr. 40). Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2008. (Tr. 13).

Plaintiff's medical records show that in May 2003, the Alabama Asthma and Allergy Clinic treated Plaintiff for chronic rhinitis, recurrent bronchitis, and mild persistent asthma. (Tr. 213-15). However, her pulmonary function testing was normal. (Tr. 215, 217). In August 2003, the Center for Pain Management in Huntsville, Alabama treated Plaintiff for pain management in her back and neck. (Tr. 218-24). In March through July 2004, SportsMed Orthopaedic Center treated Plaintiff for a bilateral foot problem. (Tr. 275-80). The record states that Plaintiff was in no acute distress, but did have severe pain. X-rays revealed no significant abnormalities and SportsMed diagnosed Plaintiff with bilateral plantar fasciitis heel pain syndrome with distal tarsal tunnel nerve entrapment worse on the left than the right, and symptomatic hallux valgus on the right. (Tr. 280). In May 2004,

Plaintiff was also treated at SportsMed for pain in her hips and knees, and chronic back pain. (Tr. 278). X-rays of Plaintiff's lumbar spine revealed mild degenerative disc disease. (Tr. 278). On Plaintiff's last visit to SportsMed in July 2004, the treating doctor noted that Plaintiff showed marked improvement in her ankle. (Tr. 275).

On June 10, 2004, Crestwood Medical Center treated Plaintiff for complaints of knee and back pain. (Tr. 237-38). X-rays of Plaintiff's lumbar spine revealed some degenerative disc disease. (Tr. 237). The treating physician speculated that Plaintiff's rehabilitation potential was good. (Tr. 238). On June 30, 2004, Dr. William Shergy treated Plaintiff for complaints of being "achy and hurting everywhere." (Tr. 286). Dr. Shergy stated Plaintiff was in no acute distress. He diagnosed Plaintiff with fibromyalgia and encouraged her to do aerobic activity. (Tr. 286). On August 6, 2004, Dr. Shergy noted Plaintiff showed some improvement with the use of Flexeril and that her lab work was unremarkable. (Tr. 284).

Dr. Lori Kaufman treated Plaintiff from August 2004 through July 2006.[1] (Tr. 321-44, 395-430). Plaintiff had complaints of fatigue, insomnia, joint/muscle pain, and reflux. (Tr. 321-22). On August 31, 2004, Dr. Kaufman diagnosed Plaintiff with fibromyalgia, and recommended an exercise program. (Tr. 321-22). Dr. Kaufman's records show that all of Plaintiff's lab tests were normal and referred to Plaintiff as a "diagnostic mystery." (Tr. 404). In February 2006, Dr. Kaufman noted

---

[1]Dr. Kaufman previously treated Plaintiff from 1998 through 2001. (Tr. 324-44).

3

Plaintiff had severe anxiety and depression, and was off all medication at that time. (Tr. 403). Plaintiff reported reluctance to use psychotherapy or drugs. (Tr. 402).

On March 8, 2005, Dr. Prem Gulati gave Plaintiff a physical for disability. (Tr. 370-72). Plaintiff reported fatigue and chronic pain all over. (Tr. 370). Dr. Gulati found Plaintiff's range of motion was normal in the extremities and in the spine, that she walked with a normal gait, was able to squat and arise without difficulty, and did not find any motor or sensory deficit. (Tr. 371-72). Dr. Gulati noted a history of fibromyalgia, chronic fatigue, and chronic bronchitis. (Tr. 372). Dr. Gulati also noted that he was unable to observe "really bad" fibromyalgia in Plaintiff, but that even if she had that condition, she "should be able to perform sitting jobs without any difficulty." (Tr. 372).

On March 24, 2005, Dr. Lois Pope performed a psychological evaluation on Plaintiff. (Tr. 367-69). Plaintiff reported a history of fibromyalgia, pain, cognitive impairment, blurred vision, and forgetfulness. (Tr. 367). Dr. Pope noted Plaintiff's mood was dysthymic and that she was highly focused on physical symptoms. (Tr. 368). Dr. Pope concluded that Plaintiff had some mild mood disturbance, and diagnosed "psychological factors affecting a medical condition" and "depressive disorder." (Tr. 368-69; Dft's Mem. 7). Dr. Pope recommended counseling to deal with the effects of the fibromyalgia. (Tr. 368).

On July 19, 2006, Dr. Kaufman completed a Medical Source Opinion upon request from Plaintiff's lawyer. The Medical Source Opinion indicated Plaintiff could not perform even sedentary level work. (Tr. 397-98). On a Clinical Assessment of Pain form, Dr. Kaufman noted Plaintiff experiences a level of pain consistent with the moderately-severe to severe level. (Tr. 399-400). Dr.

4

Kaufman attributed these limitations to fibromyalgia and noted she expected these limitations to last for a continuous period of at least twelve months. Dr. Kaufman further noted Plaintiff could not sit, stand, or walk for periods longer than twenty minutes, could not lift or carry any weight frequently, and never climb, balance, kneel, crouch, crawl, or reach. Dr. Kaufman further stated that she believes Plaintiff suffers from so much pain that it would distract from the adequate performance of daily activities and work. Dr. Kaufman also noted that she believes that the side effects of prescribed medication would further disable Plaintiff. (Tr. 395-400).

## II. ALJ Decision

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC is what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the RFC are the same as the criteria

listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform [her] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found Plaintiff has not engaged in substantial gainful activity since June 6, 2003. (Tr. 13). Plaintiff meets the disability insured status requirements of the Social Security Act through December 31, 2008. (Tr. 13). Based on the medical evidence presented the ALJ concluded Plaintiff does have a severe impairment–fibromyalgia.[2] (Tr. 16). However, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 16). The ALJ ultimately found Plaintiff has the RFC to perform work at the sedentary exertional level. He did note that she requires a sit/stand option. (Tr. 16).

According to the ALJ, Plaintiff's subjective complaints concerning her impairment and its impact on her ability to work are not fully credible due to the degree of inconsistency with the medical

---

[2]Based on the findings of Dr. Pope and Dr. Kaufman, the ALJ found Plaintiff does not have a severe mental impairment

evidence established in the record and Plaintiff's own statements. (Tr. 17). After consideration of all the medical evidence, including Plaintiff's subjective complaints, the ALJ found Plaintiff retains the RFC to perform sedentary jobs. (Tr. 17). While the ALJ found that the impairments ailing Plaintiff could give rise to the symptoms that she described, the ALJ did not find the description of the "intensity, persistence, and limiting effects of these symptoms" to be credible. (Tr. 17). The ALJ bases his decision on the fact that Plaintiff's medical evidence does not support the severe limitations claimed. The ALJ gave little weight to the opinion of Dr. Kaufman in the Clinical Assessment of Pain worksheet because he concluded it was not consistent with Dr. Kaufman's own medical records and because he found that Dr. Kaufman based it upon Plaintiff's subjective complaints. (Tr. 17, 394-400). The ALJ found that although Plaintiff is unable to perform any of her past relevant work, there are still jobs that exist in significant numbers in the national economy that she can perform. He based this decision on the testimony of a vocational expert. (Tr. 19). Thus, the ALJ ruled Plaintiff is not disabled as the Social Security Act defines that term and Plaintiff, therefore, is not entitled to a period of benefits. *See* (Tr. 19), 20 C.F.R. §404.1520(b).

### III. Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (*See* Pl.'s Mem. 2). Plaintiff argues that substantial evidence does not support the ALJ's decision, and that it contains a material error of law because the ALJ erred by giving more weight to the medical examination for disability benefits by Dr. Gulati than he did to

the opinion of Plaintiff's treating physician, Dr. Kaufman. (*See* Pl.'s Mem. 5). Specifically, Plaintiff argues that in making his decision, the law requires the ALJ to clearly articulate the reasons for giving less weight to the opinion of a treating physician. Failure to do so is a reversible error. (*See* Pl.'s Mem. 9). Plaintiff asserts that Dr. Kaufman completed the Clinical Assessment of Pain Worksheet and Medical Source Opinion on July 12, 2006, and that the ALJ should have given the most weight to the opinions given in these documents because of the "treating physician rule." (*See* Pl.'s Mem. 8, citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Plaintiff argues that because the ALJ completely disregarded these assessments by Dr. Kaufman while making his decisions, he violated the "treating physician rule" and, therefore, his decision contained a material error of law. (*See* Pl's Mem. 12).

## IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and

8


supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V. Discussion

In light of the legal standards that apply in this case, this court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, this court finds that the ALJ's findings are supported by substantial evidence and that the ALJ applied the proper legal standards.

**A.     The ALJ Properly Rejected the Opinion Given by Dr. Kaufman in the Medical Source Opinion and Assessment of Pain, and Properly Gave the Correct Weight to the Opinion of Dr. Gulati in His Examination.**

Plaintiff's initial argument is that by disregarding the opinion given by Dr. Kaufman in the Medical Source Opinion, the ALJ violated the "treating physician rule" and therefore, an error of law is present in his decision. (*See* Pl's Mem. 8-13). Defendant asserts that this was not an error of law because the ALJ gave substantial weight to the opinion of Plaintiff's treating physician, Dr. Kaufman, but did this by looking at Plaintiff's medical records with Dr. Kaufman and disregarding the Medical

Source Opinion. The ALJ concluded that Dr. Kaufman based the Medical Source Opinion on Plaintiff's subjective complaints, and the medical records demonstrated an opposite medical opinion held by Dr. Kaufman. (*See* Dft's Mem. 9).

The opinion of a claimant's treating physician must be accorded substantial weight unless some good reason exists for not doing so. This is known as the "treating physician rule." *See Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). However, the Eleventh Circuit has held that there are some situations when the ALJ can disregard the opinion or reports of a treating physician. The ALJ can ignore a treating physician's opinion if it is not supported by objective medical evidence or is merely conclusory, or if a treating physician is unsure of the accuracy of his findings and statements. *See Johns v. Brown*, 821 F.2d 551, 555 (11th Cir. 1987); *Edwards v. Sullivan*, 97 F.2d 580, 587 (11th Cir. 1991). The ALJ can also ignore the treating physician's report or give it less weight if the treating physician examined the claimant only once, or if the evidence supports a contrary conclusion or when it is contrary to other statements or reports of that physician. *See Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). If an ALJ decides to reject or give less weight to a treating physician's opinion, then he must clearly state his reasons for doing so. Failure to state his reasons is a reversible error. *Lewis*, 125 F.3d at 1440 (*citing MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Where medical evidence of record does not conclusively counter the treating physician's report or opinion and good cause is not shown, the law requires the ALJ to give

10

the treating physician's opinion substantial weight. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

Plaintiff argues the "treating physician rule" requires the ALJ to give substantial weight to the Medical Source Opinion completed by Dr. Kaufman. Plaintiff denies that any of the above exceptions to the "treating physician rule" established by the Eleventh Circuit apply to Dr. Kaufman's opinion. (*See* Pl.'s Mem. 10). However, the law only requires this court to find substantial evidence to support the decision of the ALJ. The ALJ explained his reasoning for giving little weight to Dr. Kaufman's Medical Source Opinion. He said, "The opinion is not consistent with Dr. Kaufman's medical records for the claimant. These records reveal no abnormalities in any of the claimant's tests. In addition, Dr. Kaufman indicated that the opinion was based primarily on the claimant's subjective complaints." (Tr. 17-18). Accordingly, the ALJ found that the Medical Source Opinion of Dr. Kaufman fell within the exceptions to the "treating physician rule," because it is not based on objective medical evidence, and because the other evidence supports a contrary conclusion. That is, the opinion is contrary to other statements or reports of Dr. Kaufman.

The evidence at issue is conclusory because Dr. Kaufman indicated on the Medical Source Opinion that she completed the form based on Plaintiff's subjective complaints. The medical opinion must be objective. *Johns*, 821 F.2d at 555. Dr. Kaufman gave several opinions in the Pain Assessment Evaluation, including her opinion regarding Plaintiff's ability to contribute to the national economy and about the amount of pain Plaintiff experiences. However, Dr. Kaufman could not base either of these opinions on medical evidence from her records. First, Dr. Kaufman is not a vocational

expert, and therefore has no qualifications to determine Plaintiff's ability to contribute to the national economy. The ALJ summoned a vocational expert to the hearing to give testimony on this subject. Second, although Dr. Kaufman may know from experience that fibromyalgia is a painful disease, it is axiomatic that she could never actually know exactly how much pain Plaintiff really feels at different times and was required to rely upon Plaintiff's self-reports concerning that subject. These two reasons make Dr. Kaufman's opinions on these matters unjustified and conclusory. "The ALJ may reject an opinion that is so brief and conclusory that it lacks persuasive weight or is unsubstantiated by any clinical or laboratory findings." *Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985). Therefore, the ALJ was justified in rejecting Dr. Kaufman's opinion evidence while making his determination about Plaintiff's disability.

The ALJ also exercised proper discretion when he discounted Dr. Kaufman's Medical Source Opinion because he believed her opinion was contrary to her own findings in Plaintiff's medical records. The record establishes that Plaintiff suffers from fibromyalgia. Plaintiff argues this disease impairs her from work at any job in the national economy and, therefore, she should receive disability benefits. Dr. Kaufman supports this contention in the Medical Source Opinion. The Medical Source Opinion states: (1) Plaintiff's impairment will last at least twelve months; (2) Plaintiff is unable to work in the national economy; (3) Plaintiff can only sit, stand, or walk for twenty minutes at a time; (4) Plaintiff can only lift up to 5 pounds occasionally; and (5) Plaintiff's pain will totally restrict her from a productive level of work performance. (Tr. 394-400). However, Plaintiff's medical records from Dr. Kaufman's office show a different conclusion. During many appointments Plaintiff

complained only of allergies, asthma, and stress/depression. In many of the exams Dr. Kaufman concluded that Plaintiff was normal. At one point Dr. Kaufman even referred to Plaintiff as a "diagnostic mystery." (Tr. 401-16). Scarcely any records mention Plaintiff's pain, and none mention her inability to work. These medical records give the impression that Plaintiff is a chronically sick woman, but not one whose sickness impairs her so much that she cannot function normally. The ALJ was correct in disregarding Dr. Kaufman's Medical Source Opinion because it was contrary to her own medical records.

The ALJ gave the treating physician's opinion and records the appropriate weight in determining whether Plaintiff qualified for disability under the Act. The ALJ also gave the consulting physician's examination proper weight because it was consistent with Plaintiff's medical records, but certainly not more weight than he gave to the treating physician's records. The ALJ states in his written opinion that he did not give Dr. Gulati's opinion considerable weight because it was "not detailed enough to provide any real limitations." (Tr. 18). Therefore, because there is substantial evidence to support the findings of the ALJ and proper legal standards were applied, this case is due to be affirmed.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this       23rd       day of June, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

14